UNITED STATES ex rel. HERGE v. COMMONWEALTH OF PENNSYLVANIA et al.

No. 165.

United States District Court
W. D. Pennsylvania.

March 17, 1950.

638

Thomas Wentling, Pittsburgh, Pa., for petitioner.

GOURLEY, District Judge.

This is a habeas corpus proceeding by the United States of America on relation of Irvin C. Herge against Stanley P. Ashe, Warden, Western State Penitentiary.

Before the petitioner instituted the habeas corpus proceeding in this court, he had filed application for writ of habeas corpus in the Supreme Court of Pennsylvania.

Irvin C. Herge, the petitioner, entered a plea of guilty to an indictment returned at No. 59 March Term 1946, Court of Quarter Sessions, certified to 1 March Term, 1946 in the Court of Oyer and Terminer of Lawrence County, Pennsylvania, in which he was charged with the murder of Jean Fatur at Elwood City, Pennsylvania, on October 17, 1945. Evidence was presented as provided by the Act of June 24, 1939, P.L. 872, 18 Purdon's Pennsylvania Statutes Annotated, § 4701. After the taking of extensive testimony offered by both the Commonwealth and the petitioner, the trial judge adjudicated the petitioner guilty of murder in the first degree and determined the penalty to be life imprisonment. On April 22, 1946, the trial court sentenced the petitioner to the Western State Penitentiary for and during the term of his natural life.

The facts and circumstances which surround the commission of the crime are most gruesome and brutal. On October 17, 1945, the date of the killing, Jean Fatur, the victim who had been acquainted with Herge for some period of time, went to see him at his home about 11:00 o'clock in the morning. The girl was pregnant and during the visit, Herge became enraged at her, brutally struck and mistreated her, and as a result thereof she died. He placed the body of the dead girl in the trunk compartment of his car. When the girl was missed by her family, the defendant through various means endeavored to avert suspicion. On October 22, 1945, the defendant left the community where he lived and went to Ohio. During the period from October 17, 1945 to October 28, 1945, he kept the body in the trunk compartment of his car. He threw the body into a river southwest of Toledo, Ohio, where it was found by fishermen. Through a description of the teeth of the girl, her identity was ascertained. The circumstances which surrounded the crime were such in the opinion of the trial judge that the death penalty would have been imposed if the mental capabilities of the petitioner had been normal.

Petitioner contends that he was denied rights given to him under the Constitution of the United States in the following particulars:

1. That he was denied the right of trial by jury in that he never knowingly waived this right.

2. He did not enter a plea of guilty.

3. He was mentally incompetent to understand the nature of his acts—

(a) At the time of the commission of the crime, and

(b) At the time the alleged plea of guilty was purported to have been made.

4. That under the law of Pennsylvania, where a plea of guilty is entered to a murder charge, it is necessary that more than one judge sit to determine the degree of guilt and that since one judge sat in the instant case, the imprisonment of the petitioner is in violation of the Constitution of the United States.

5. That the Courts of Lawrence County, Pennsylvania, did not have jurisdiction

for the reason that the crime did not occur in said county.

The respondent contends:

1. That the petitioner did not exhaust his remedies under state law, and this court, therefore, has no jurisdiction.

2. That the petitioner was not denied any rights given him under the Constitution of the United States.

■ In passing upon the application for writ of habeas corpus in this court, judicial knowledge will be taken of all records and proceedings in the Courts of Quarter Sessions and Oyer and Terminer of Lawrence County, Pennsylvania, and the Supreme Court of the Commonwealth of Pennsylvania. Said records have been made part of the record in this proceeding and are marked as exhibits:

(1) Commonwealth's Exhibit No. 1— Records at No. 59 March Term, 1946, Court of Quarter Session, certified to No. 1 March Term, 1946, Court of Oyer and Terminer.

(2) Commonwealth's Exhibit No. 2— Opinion and order of trial judge.

(3) Commonwealth's Exhibit No. 3— Photostatic copy of indictment included in Commonwealth's Exhibit No. 1.

(4) Commonwealth's Exhibit No. 4— Transcript of testimony and exhibits.

(5) Commonwealth's Exhibit No. 5— Original indictment and related papers.

(6) Commonwealth's Exhibit No. 6— Opinion and order of court.

(7) Commonwealth's Exhibit No. 7— Sentence imposed by the court.

(8) Petitioner's Exhibit "A"—Certification of petition for writ of habeas corpus filed in the Supreme Court of Pennsylvania, refused by per curiam opinion on September 26, 1949.

Has the petitioner exhausted the remedies existing under state law?

The writ of habeas corpus filed in the Supreme Court of Pennsylvania was refused with per curiam order and without opinion. In reviewing said application for writ of habeas corpus, it is not possible to determine from a reading of the petition whether the petitioner was basing his writ on a state or federal question. The problem of determining whether the disposition of the petition by the Supreme Court was based on a federal or state question becomes difficult.

■ It is a question for the determination of the federal court, from an examination of the complete record, as to whether the refusal of the writ by the Supreme Court of Pennsylvania rested on a substantial and adequate state ground. Honeyman v. Hanan, 300 U.S. 14, 18, 57 S.Ct. 350, 81 L.Ed. 476; In re Application of Baer, 3 Cir., 169 F.2d 770.

■ It is a well-established principle that before the Supreme Court will review a decision of a state court, it must affirmatively appear from the record that the federal question was presented to the highest court of the state having jurisdiction, and that its decision of the federal question was necessary to its determination of the cause. Where the decision of the state court might have been either on a state ground or on a federal ground, and the state ground is sufficient to sustain the judgment, the Supreme Court of the United States will not undertake to review the state decision. It is likewise well settled that if the independent ground were not a substantial or a sufficient one, it will be presumed that the state court based its judgment on the law raising the federal question, and the Supreme Court will then take jurisdiction. Williams v. Kaiser, 323 U.S. 471, 477, 65 S.Ct. 363, 89 L.Ed. 398; In re Application of Baer, supra.

■ If the refusal of the writ by the Supreme Court of Pennsylvania rested on a substantial and adequate state ground, the Supreme Court of the United States would not have granted certiorari and hear or determine the federal question. Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572.

■ The scope of a habeas corpus proceeding (in a state court) is a state and not a federal question. Herndon v. Lowry, 301 U.S. 242, 57 S.Ct. 732, 81 L.Ed. 1066; In re Application of Baer, supra.

A review of the complete record in the state courts convinces me that their refusal of the writ did not involve or require a determination of a federal question. In fact, I cannot determine a federal question was raised or considered by the Supreme Court of Pennsylvania. The Supreme Court of the United States would not have taken jurisdiction if an application for writ of certiorari had been filed from the denial of the writ by the Supreme Court of Pennsylvania.

■ It is my judgment that the petitioner did exhaust his state remedies in the habeas corpus proceeding filed with the Supreme Court of Pennsylvania.

Since the petition for writ of habeas corpus filed with the Supreme Court of Pennsylvania has failed to afford to the petitioner a full and fair adjudication of the federal questions raised in this court, it becomes the obligation of the Federal District Court to proceed with a full hearing to determine whether any rights of petitioner under the Constitution of the United States have been denied. Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L. Ed. 572.

Has the petitioner been denied rights given to him under the Constitution of the United States, and is he being deprived of his liberty without due process of law?

1. Was the Petitioner Denied the Right to Trial by Jury?

■ Counsel representing the petitioner were very thorough, learned and experienced in the trial of criminal cases. Counsel advised the petitioner it would be to his best interests to enter a plea of guilty rather than stand trial. Counsel fully explained the result of the entry of the plea of guilty, and that testimony would be taken by the court to determine the degree of murder. After the plea of guilty was entered, the trial judge interrogated the petitioner as to whether he understood the nature of the plea which was entered and the defendant advised that he did.

At no time, during the hearing, when testimony was taken to determine the degree of murder did the petitioner raise any question or express a desire to withdraw his plea of guilty.

The petitioner never expressed dissatisfaction or disapproval of his legal counsel, and was aware and informed at the time the plea of guilty was entered that his counsel was prepared to proceed with the trial if a "not guilty" plea was entered.

During the hearing before the trial judge on the question of degree of guilt, the petitioner consulted with his counsel and suggested from time to time questions to be asked or inquiry to be made of witnesses who were called to testify.

I cannot conclude that the petitioner was denied a right to trial by jury. In fact, I believe he expressly, with full and complete understanding, waived his right to a jury trial.

2. Did the Petitioner Enter a Plea of Guilty to the Murder Indictment?

The reasons set forth in answer to the previous question answer the problem without additional comment.

3. Was the Petitioner Mentally Incompetent to Understand the Nature of His Acts—

(a) At the time of the commission of the crime, and

(b) At the time the alleged plea of guilty was purported to have been made?

■ In order for insanity to be a legal defense to the commission of a crime there must be:

(a) Such a perverted and deranged condition of the mental and moral faculties as to render a person incapable of distinguishing between right and wrong; or

(b) he must be unconscious and unaware at the time of the nature of the act he is committing; or

(c) where, though conscious of it and able to distinguish between right and wrong and know that the act is wrong, yet his will, or the governing power of his mind, has been otherwise than voluntarily, so completely destroyed that his actions are not subject to it, but are beyond his control. Davis v. United States, 165 U.S. 373, 17 S.Ct. 360, 41 L.Ed. 750; Commonwealth v. Neill, 362 Pa. 507, 67 A.2d 276.

■ Even if the crime were committed under the influence of a maniacal outburst, if the crime violator knew the difference between right and wrong, and that the act was unlawful, said person is responsible for his criminal acts. Commonwealth v. De Marzo, 223 Pa. 573, 72 A. 893.

The actions of the petitioner, in his endeavor to confuse the relatives of the victim as to his possible connection with the crime and the keen manner in which he disposed of the body establish beyond question that he was well aware of the difference between right and wrong at the time the crime was committed, and understood and appreciated the severity of his act and its unlawfulness.

■ The court before whom the defendant is arraigned on an indictment for a crime has a wide discretion in determining whether or not he is in a fit mental state to be tried, and the law does not make it obligatory on the judge to order a preliminary inquest to adjudicate the defendant's sanity or insanity. The entry of a plea of guilty by a defendant to a criminal indictment is an implied admission of the defendant's sanity. Commonwealth ex rel. Smith v. Ashe, Warden, et al., 364 Pa. 93, 71 A.2d 107.

The trial judge was definitely of the opinion that the petitioner understood and was fully aware of the nature of the offense which he committed on October 17, 1945, and at the time a plea of guilty was entered on March 11, 1946. This construction is amply supported by competent medical men who testified and offered their detailed explanation at the time of hearing. The trial Judge properly considered said circumstances in reaching a conclusion that the degree of punishment should be limited to life imprisonment rather than the imposition of the death sentence.

■ Under these circumstances, the existence of every fact to show beyond a reasonable doubt the establishment of the crime charged has been proved. Davis v. United States, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499.

■ The Court cannot substitute its judgment for that of the judge who heard the witnesses and who was solely qualified to pass upon the credibility.

■ Where a plea of guilty is entered to an indictment charging murder, and the trial judge adjudges the accused guilty of murder in the first degree and finds under all the testimony that the accused was sane at the time he committed the crime, the sentence imposed by the trial judge becomes final and conclusive. Commonwealth v. Smith, 362 Pa. 222, 66 A.2d 764.

■ I am satisfied the petitioner was fully aware of his acts and deeds, both when the crime was committed and when the plea of guilty was entered to the murder indictment.

4. After the Entry of the Plea of Guilty to the Murder Indictment, Was There a Compliance With the Law?

■ If a person indicted for murder shall be convicted by confession, the court shall proceed by examination of witnesses to determine the degree of the crime, and to give sentence accordingly. One judge may hear the evidence and determine the degree of the crime after a plea of guilty to murder, and preside over the court of oyer and terminer. The determination of the degree of guilt is not a trial though facts from the evidence must be found, but is part of the sentencing power vested in the court. Commonwealth v. Shawell, Appellant, and Commonwealth v. England, Appellant, 325 Pa. 497, 191 A. 17.

5. Did the Courts of Lawrence County, Pennsylvania, Have Jurisdiction?

■ This question must be answered affirmatively and requires no discussion.

There is nothing in the record in the state court which would impeach the fairness and temperateness with which the trial judge approached his most unpleasant task. This is not such a case as would require the federal courts to interfere with the administration of justice in the state courts and discharge the petitioner through a habeas corpus proceeding. The adjudication by the state court that the petitioner

was guilty of murder in the first degree and the sentence imposed of life imprisonment was not contrary to the law of Pennsylvania, nor did it deny the petitioner any rights given to him by the Constitution of the United States. The imprisonment is, therefore, proper.

Findings of Fact and Conclusions of Law are hereby entered together with an appropriate Order.

## Findindgs of Fact

1. That the petitioner, Irvin C. Herge, pleaded guilty on the 11th day of March, 1946, to an indictment returned in the Court of Quarter Sessions of the Peace, Lawrence County, Pennsylvania, at No. 59 March Term, 1946, which was certified to the Court of Oyer and Terminer of Lawrence County, Pennsylvania, to No. 1 March Term, 1946.

2. That said indictment charged the petitioner with unlawfully, willfully and maliciously, and with malice aforethought, did make a certain assault on the body of Jean Fatur, and did kill and murder the said Jean Fatur.

3. That after a plea of guilty was entered on the 11th day of March, 1946, the trial judge proceeded to hear testimony which either the Commonwealth or the defendant desired to present in order to determine the degree of murder.

4. That on the 9th day of April, 1946, the Court heard the argument of counsel for the Commonwealth and the defendant in which consideration was thoroughly given to the applicable principle of law when considered in the light of the record.

5. That on April 22, 1946, the court adjudged petitioner to be guilty of murder in the first degree, and imposed upon him the penalty of life imprisonment in the Western State Penitentiary, Pittsburgh, Allegheny County, Pennsylvania.

6. That subsequent to the arrest of the petitioner, two competent and capable members of the bar were secured by relatives of the petitioner to act as his legal counsel.

7. That prior to the petitioner appearing before the court and entering his plea of guilty on the 11th day of March, 1946, full and ample opportunity existed for the petitioner to confer and consult with his legal counsel.

8. That the petitioner's legal counsel was experienced, well informed, qualified and suitable to represent the interests of the petitioner in connection with the crime for which he was charged.

9. That prior to the entry of the plea of guilty, the petitioner was fully notified and informed, both by information and indictment, of the charge of which he was accused.

10. That the petitioner was represented by counsel at the time the plea of guilty was entered, during the whole of the period that testimony was presented, and at the time of the argument before the court on the question of the degree of murder.

11. That no appeal was taken by the petitioner from the sentence imposed by the trial judge.

12. That the County of Lawrence has introduced in evidence the full and complete records which relate to the offense for which the petitioner was sentenced to the Western State Penitentiary.

## Conclusions of Law

1. That the Pennsylvania Supreme Court in denying the writ of habeas corpus did not decide a federal question.

2. That since the Supreme Court of Pennsylvania did not decide a federal question, it is proper for the federal district court to consider the petition.

3. That the petitioner was not denied a right to trial by jury.

4. That the petitioner entered a plea of guilty to the murder indictment.

5. That the petitioner was mentally competent to understand the nature of his acts—

(a) At the time of the commission of the crime, and

(b) At the time he entered a plea of guilty.

6. That the trial judge heard and disposed of the plea of guilty in accordance

with the law in the Commonwealth of Pennsylvania.

7. That the Court of Quarter Sessions and Court of Oyer and Terminer of Lawrence County, Pennsylvania, had jurisdiction.

8. That the petitioner has not been denied any rights given to him under the Constitution of the United States.

9. That the petition for writ of habeas corpus must be denied.

### Order

And now, the Petition for Writ of Habeas Corpus is denied.